UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | | |
|---|---|---|
| CRYSTAL LYNN MORTON and ELIZABETH TRAPP, individually and on behalf of others similarly-situated, <br> Plaintiffs, <br><br> vs. <br><br> JACKSON COUNTY, JACKSON COUNTY SHERIFF'S DEPARTMENT, SHERIFF MARC LAHRMAN, in his individual and official capacities, and JAIL COMMANDER STAN DARLAGE, in his individual and official capacities, <br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | 4:10-cv-00053-RLY-DML |

**ENTRY ON PLAINTIFFS' MOTION FOR CLASS CERTIFICATION AND MOTION TO APPOINT COUNSEL**

Plaintiffs, Crystal Lynn Morton ("Morton") and Elizabeth Trapp ("Trapp") (collectively, "Plaintiffs"), filed this lawsuit against Defendants, Jackson County, Jackson County Sheriff's Department (the "JCSD"), Sheriff Marc Lahrman ("Sheriff Lahrman"), in his individual and official capacities, and Jail Commander Stan Darlage ("Commander Darlage"), in his individual and official capacities (collectively, "Defendants"), for violations of the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution pursuant to 42 U.S.C. § 1983 ("Section 1983"). Plaintiffs now seek certification of this matter as a class action and appointment of class counsel under Federal Rule of Civil Procedure 23 ("Rule 23"). For the reasons set forth below, the court

1

**GRANTS** Plaintiffs' Motion for Class Certification and Motion to Appoint Class Counsel.

## I. Background

Plaintiffs and the proposed class members were inmates at the Jackson County Jail on July 16, 2008. (Complaint ¶ 13). On that day, four female jail officers performed strip searches of Plaintiffs outside their cells in the Day Room in the presence of a male jail officer. (Complaint ¶¶ 14-15; Declaration of Crystal Morton ("Morton Dec.") ¶ 4; Declaration of Elizabeth Trapp ("Trapp Dec.") ¶ 4). Without permission to disrobe in privacy behind a wall, towel, or curtain, Plaintiffs were required to remove all their clothing. (Complaint ¶ 16; Morton Dec. ¶¶ 5, 7; Trapp Dec. ¶¶ 5, 7). Then, Plaintiffs were ordered to "squat, grab their ankles, and cough while being completely undressed." (Complaint ¶ 17).

In addition to being videotaped with a video camera, the searches were performed within the view of male employees of Jackson County and the JCSD, male and female inmates, and surveillance video cameras. (*Id.* ¶¶ 18-22). The female inmates also were visible to each other as they stood waiting for their turn to be searched. (Morton Dec. ¶ 8; Trapp Dec. ¶ 8). From the Control Room, male jail officers were looking at Plaintiffs through the glass of the Day Room. (Morton Dec. ¶ 9; Trapp Dec. ¶ 9). Also, Officer Everhart opened the door of the Day Room often, at which time Plaintiffs saw male jail officers and inmates looking at the naked bodies of the female inmates through the open door. (Morton Dec. ¶ 10; Trapp Dec. ¶ 10). As a result of the strip searches, Plaintiffs

and a majority of the female inmates filed grievances with Sheriff Lahrman and Commander Darlage. (Morton Dec. ¶¶ 15-16; Trapp Dec. ¶ 15).

Plaintiffs seek to include in this action the following proposed class: all female inmates strip searched at the Jackson County Jail on July 16, 2008. (Morton Dec. ¶ 18). Also, Plaintiffs request that the court appoint various members of the law firm of Haskin & LaRue, LLP ("the Firm"), including, but not limited to, John H. Haskin, Bradley L. Wilson, and Meghan U. Lehner, as class counsel pursuant to Rule 23(g).

## II. Discussion

### A. Motion for Class Certification

Rule 23 governs class action lawsuits. The party seeking class certification bears the burden of establishing that certification is appropriate. *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 596 (7th Cir. 1993). To determine whether certification of a particular class is appropriate, Rule 23 sets forth a two-step analysis. First, the plaintiff must satisfy all four requirements of Rule 23(a): (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. *Harriston v. Chicago Tribune Co.*, 992 F.2d 697, 703 (7th Cir. 1993). Failure to meet any one of these requirements precludes certification of a class. *Retired Chicago Police Ass'n*, 7 F.3d at 596. Second, the plaintiff must also meet one of the requirements of Rule 23(b). *Williams v. Chartwell Fin. Servs., Ltd.*, 204 F.3d 748, 760 (7th Cir. 2000). The court has "'broad discretion to determine whether certification of a class-action lawsuit is appropriate.'" *Arreola v. Godinez*, 546 F.3d 788, 794 (7th Cir. 2008) (quoting *Chavez v. Ill. State Police*, 251 F.3d 612, 629 (7th

Cir. 2001)). While the court may not conduct a preliminary inquiry into the merits of the underlying claims, *Eisen v. Carlisle and Jacquelin*, 417 U.S. 156, 177 (1974), the court may look beyond the pleadings to determine whether the requirements of Rule 23 are met. *Szabo v. Bridgeport Machines, Inc.*, 249 F.3d 672, 677 (7th Cir. 2001) ("[N]othing in . . . Rule 23, or in the opinion in *Eisen*, prevents the district court from looking beneath the surface of a complaint to conduct the inquiries identified in that rule and exercise the discretion it confers.").

Plaintiffs request certification of the proposed class, which they contend meets the requirements under Rule 23(a) and Rule 23(b)(3). Defendants challenge Plaintiffs' ability to satisfy the numerosity, commonality, and adequacy of representation requirements enumerated in Rule 23(a), as well as the requirements of Rule 23(b)(3). Furthermore, Defendants dispute the adequacy of Plaintiffs' proposed class counsel under Rule 23(g). Although Defendants urge the court to consider their argument that settlement is more likely to be achieved outside the confines of Rule 23(e), the settlement procedures under Rule 23(e) have no bearing on the court's determination on class certification.

    1.    **Rule 23(a) Requirements**

        a.    **Numerosity**

The first prerequisite for class certification under Rule 23(a) requires that the class be "so numerous that joinder of all members is impracticable." FED. R. CIV. P. 23(a)(1). Rule 23 does not identify a threshold number to establish numerosity; however, a class of at least forty members generally satisfies the requirement. *McGarry v. Becher*, 2010 WL

1257446, *3 (S.D.Ind. Mar. 24, 2010) (citing *Walker v. Bankers Life & Cas. Co.*, 2007 WL 2903180, at *3 (N.D.Ill. Oct.1, 2007)). To be impracticable, joinder need not be impossible, but rather joinder must be inconvenient and difficult. *Strunk v. LaGrange Cnty. Sheriff*, 2011 WL 839662, *3 (N.D.Ind. Mar. 7, 2011) (citing 32B Am.Jur.2d Fed. Courts *When Joinder is Impracticable* § 1608 (2010)). To determine whether joinder is impracticable, the court may consider the following factors: class size; ease of identifying the potential members and determining their addresses; geographic dispersion; and whether the individual claims are so small as to inhibit potential class members from pursuing their own claims. *Young v. Magnequench Int'l, Inc.*, 188 F.R.D. 504, 506 (S.D.Ind. 1999). Courts also rely on common sense when determining whether a proposed class meets the numerosity requirement. *Redmon v. Uncle Julio's of Ill., Inc.*, 249 F.R.D. 290, 294 (N.D.Ill. 2008) (citing *Ringswald v. Cnty. of DuPage*, 196 F.R.D. 509, 511-12 (N.D.Ill. 2000)). "Mere speculation" and "conclusory allegations" of the class size will not support a finding that joinder is impracticable. *Arreola*, 546 F.3d at 797.

To support their assertion that common sense instructs that this class of thirty-two members is so numerous that joinder is impracticable, Plaintiffs cite circuit courts as well as a district court within the Seventh Circuit that have found the numerosity requirement satisfied with fewer than thirty members in the class. *See Ark. Educ. Ass'n v. Bd. of Educ.*, 446 F.2d 763 (8th Cir. 1971) (class of twenty); *Cypress v. Newport News Gen. & Nonsectarian Hosp. Ass'n*, 375 F.2d 648 (4th Cir. 1967) (class of eighteen); *Rosario v.*

*Cook Cnty.*, 101 F.R.D. 659 (N.D.Ill. 1983) (class of twenty). Furthermore, Plaintiffs highlight the small claims of individual class members, reduced costs to the parties and the court in the event of a class action, and the decreased likelihood that individual class members will bring individual cases due to the personal and embarrassing nature of the allegations. Defendants contend that Plaintiffs' reliance on common sense is akin to making a conclusory allegation that joinder is impracticable.

Plaintiffs assert, and Defendants do not deny, that the proposed class consists of approximately thirty-two female inmates. Although a class of thirty members is not unprecedented, the proposed class does not meet the forty member threshold that generally satisfies the numerosity requirement; therefore, the court considers additional factors. The small amount of the individual claims, which would inhibit potential class members from pursuing their own claims, weighs in favor of class certification. Additionally, the potential members are inmates and therefore are unlikely to have the means to bring a lawsuit. Judicial economy also would be served by the reduction of costs to the court and the parties by proceeding with this suit as a class action rather than through joinder. While the identification of the potential members through jail records presumably would not be difficult and their geographic dispersion is unknown, the small amount of the individual claims, lack of means of the class members to bring a suit, personal and embarrassing nature of the allegations, and interests in judicial economy favor class certification. Therefore, the numerosity requirement of Rule 23(a) is satisfied.

### b. Commonality

Rule 23(a) also requires that there be "questions of law or fact common to the class." FED. R. CIV. P. 23(a)(2). The commonality requirement is usually satisfied by a "'common nucleus of operative fact.'" *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998) (quoting *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992)). A common nucleus of operative fact exists "where . . . the defendants have engaged in standardized conduct toward[] members of the proposed class . . . ." *Id.* Relevant to commonality are the defendant's conduct and the plaintiff's legal theory, but not the injury to the class members. *Bickel v. Sheriff of Whitley Cnty.*, 2010 WL 883654, at *4 (N.D.Ind. Mar. 5, 2010).

Here, all potential class members were strip searched on July 16, 2008. All class members suffered their alleged injuries based on Defendants' standard conduct toward each inmate during this event. A common question exists among all members regarding whether the strip searches and the manner in which they were conducted pass constitutional muster. The varying effects of the alleged actions and amount of compensatory damages from inmate to inmate, which Defendants contend negates commonality, is irrelevant. *See Bickel*, 2010 WL 883654, at *4. Because the claims of the class members arise from the same conduct by Defendants under the same legal theory, Plaintiffs satisfy the element of commonality.

### c. Typicality

Third, Rule 23 requires typicality, meaning that the claims or defenses of the

7

named plaintiffs be "typical of the claims or defenses of the class." FED. R. CIV. P. 23(a)(3). "[A] 'plaintiff's claim is typical if it arises from the same event . . . that gives rise to the claims of the other class members and his or her claims are based on the same legal theory.'" *Rosario*, 963 F.2d at 1018 (quoting *De La Fuente v. Stokley-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983)). Here, Defendants do not challenge the typicality requirement. Nonetheless, typicality is met, because Plaintiffs' and the potential class members' claims arise from the same event, *i.e.*, the strip searches conducted on July 16, 2008, and the claims may all be brought under the same legal theory, *i.e.*, as violations of the Fourth, Eighth, and Fourteenth Amendments to the Constitution.

### d. Adequacy of Representation

The final prerequisite for class certification requires that the class representative(s) "fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4). The adequacy of representation requires that (1) a class representative have "a sufficient stake in the outcome to ensure zealous advocacy" and "not have claims antagonistic to or in conflict with claims of other class members," and (2) the named plaintiff's counsel be "experienced, qualified, and generally able to conduct litigation on behalf of the class." *Roe v. Bridgestone Corp.*, 257 F.R.D. 159, 168 (S.D.Ind. 2009) (citing *Susman v. Lincoln Am. Corp.*, 561 F.2d 86, 90 (7th Cir. 1977)). Although the elements of Rule 23(a)(4) include the adequacy of Plaintiffs' counsel, the specific requirements for the appointment of Plaintiffs' counsel as class counsel are now outlined in Rule 23(g) and therefore will be discussed separately. *See* FED. R. CIV. P. 23(g) and Advisory Committee Note to 2003

Amendments. Regarding the adequacy of the proposed class representatives, which will continue to be scrutinized under Rule 23(a)(4), *see id.*, Defendants first argue that the mere declarations by the proposed representatives that they will vigorously prosecute this action without more are insufficient, and that the Plaintiffs have failed to show they are uniquely situated to represent a class harm due to their superior knowledge of and motivation to pursue the alleged claims. Second, Defendants assert that Morton has interests antagonistic to the proposed class due to her propensity for dishonesty, disobedience, and lack of respect for authority and others.

Contrary to the Defendants' assertions, Plaintiffs have repeatedly assured the court of their desire to zealously advocate the claims on behalf of the class. Plaintiffs declared under oath that they "will vigorously prosecute this action through the assistance and representation of counsel." (Morton Dec. ¶ 17; Trapp Dec. ¶ 16). Additionally, Plaintiffs have prosecuted this action since June 1, 2010, with no indication that their commitment has waned. Although Defendants claim that Plaintiffs are required to show that they are uniquely situated to represent a class harm due to the nature of this action, they provide no authority for this alleged requirement. Accordingly, Plaintiffs have provided sufficient assurances that they will zealously advocate this action on behalf of the unnamed class members.

Defendants also attack Morton's credibility on several grounds. Courts may consider a class representative's honesty and credibility in determining his or her ability to adequately represent a class under Rule 23(a)(4). *See Bridgestone Corp.*, 257 F.R.D. at

168; *Lapin v. Goldman Sachs & Co.*, 254 F.R.D. 168, 176-77 (S.D.N.Y. 2008) (quoting *Savino v. Computer Credit, Inc.*, 164 F.3d 81, 87 (2nd Cir. 1998) ("To judge the adequacy of representation, courts may consider the honesty and trustworthiness of the named plaintiff."). However, the court notes that in this case, Defendants do not attack the credibility of both Plaintiffs. Regardless of Morton's credibility, Trapp's adequacy with respect to credibility remains unchallenged; therefore, the court need not pursue this issue. *Bridgestone Corp.*, 257 F.R.D. at 169 (the issue of credibility was not pursued, partially because even if the court had found that some plaintiffs were inadequate class representatives due to a lack of credibility, other plaintiffs' credibility remained unchallenged).

Accordingly, Plaintiffs are adequate to represent the class as required by Rule 23(a)(4).

### 2. Rule 23(b)(3) Requirements

In addition to the prerequisites of Rule 23(a)(4), Plaintiffs must satisfy the requirements of one of the subsections of Rule 23(b) to proceed with a class action. FED. R. CIV. P. 23(b). Plaintiffs choose to proceed under Rule 23(b)(3), which authorizes certification of an "opt-out" class (typically suitable for damages claims), because their claims involve monetary compensation. Rule 23(b)(3) requires that (1) questions of law or fact common to class members predominate over any questions affecting only individual members, and (2) a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. *Id.* at 23(b)(3). The predominance

requirement is similar to the typicality requirement of Rule 23(a)(3). *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). Pertinent factors to consider relative to superiority include:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

*Id.*

Defendants claim that individual recovery in this case is not slight and the injuries suffered are of a personal nature, which suggests that the amount of damages will vary as well as the individuals' interests in controlling the prosecution; therefore, questions of fact common to the class do not predominate over questions affecting individual members. Plaintiffs contend that class actions often involve claims for money damages that are personal in nature and vary among class members, and that a class action is superior, because there is no apparent interest in individual control over the prosecution due to the lack of multiple individual suits.

The court agrees with Plaintiffs. Like the typicality analysis, liability arising from a common event will be based on a common question for all of the proposed class members, despite the potential for variations in the amount of damages. Defendants will be liable if the strip searches of female inmates conducted in view of male employees and inmates violated the Fourth, Eighth, and Fourteenth Amendments of the United States

Constitution. Also, nowhere do Defendants suggest that their defenses will vary based on each class member's individual circumstances. Each class member's claim turns on the same operative facts arising from a common event - the July 16, 2008, strip searches of the female inmates of the Jackson County Jail. The common issue regarding liability outweighs any variations in individual damages; therefore, the predominance prong of Rule 23(b)(3) is satisfied.

Plaintiffs also satisfy the superiority prong of the test under Rule 23(b)(3). Individual class members are unlikely to be interested in controlling the prosecution of separate actions. At this point, no other potential class members have filed separate claims, and multiple individual suits are unlikely due to the expense of litigation and the likelihood that the damages will not be substantial. Judicial economy would also be served by concentrating the litigation in this forum, because the Jackson County Jail, at which many of the proposed class members reside, is located within the Southern District of Indiana, New Albany Division. Additionally, a class action will simplify discovery and settlement negotiations and protect the court from multiple suits. *See Hubler Chevrolet, Inc., v. General Motors Corp.*, 193 F.R.D. 574, 582 (S.D.Ind. 2000) (class actions are favored in part to avoid duplicative lawsuits, because if all potential plaintiffs filed individual claims, then "the federal courts would be open to an avalanche of suits involving duplicitous discovery and a repetition of legal determinations"). Although Defendants chastise Plaintiffs for failing to address various other methods for adjudication of the claims in this case, they fail to indicate why or if any of the other

12

methods are superior to a class action. Plaintiffs have demonstrated that the judicial economy of consolidation of separate claims outweighs any difficulties of consolidation; therefore, a class action is superior in this case to other available methods of adjudication. *See Mejdrech v. Met-Coil Systems Corp.*, 319 F.3d 910, 911 (7th Cir. 2003) (finding that a class action is appropriate under Rule 23 "when the judicial economy from consolidation of separate claims outweighs any concern with possible inaccuracies from their being lumped together in a single proceeding for decision by a single judge or jury").

Because Plaintiffs have shown that class certification is appropriate under Rule 23(a) and (b)(3), the court **GRANTS** Plaintiffs' motion to certify the proposed class, comprised of all female inmates strip searched at the Jackson County Jail on July 16, 2008.

### B. Motion to Appoint Class Counsel

Plaintiffs also filed a Motion to Appoint Class Counsel pursuant to Rule 23(g), to which Defendants did not respond; however, Defendants discuss their objections to Plaintiffs' counsel under Rule 23(g) in the Response to Plaintiffs' Motion for Class Certification. Specifically, Defendants argue that the considerations in Rule 23(g)(1)(A)(i)-(iv) weigh against appointment of Plaintiffs' counsel as class counsel.

Once a class is certified, the court is required to appoint class counsel, taking into consideration several factors outlined in Rule 23(g). FED. R. CIV. P. 23(c)(1)(B), (g). The court must consider "(i) the work counsel has done in identifying or investigating

potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." *Id.* at 23(g)(1)(A). The court may also consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." *Id.* at 23(g)(1)(B).

Based on these considerations, the court believes Plaintiffs' counsel will fairly and adequately represent the interests of the class. The Firm has reviewed in detail Plaintiffs' claims, conducted legal research, and engaged in written discovery in this action. Moreover, John H. Haskin has participated as defense and class counsel in several class actions and collective actions, and the Firm asserts that it has extensive experience litigating Section 1983 claims. Also, in addition to the various attorneys presently working on this case, the Firm pledges to continue to assign attorneys and administrative staff to this matter. Accordingly, the court **GRANTS** Plaintiffs' motion to appoint the Firm as class counsel.

Finally, as authorized by Rule 23(g)(1)(C), the court **ORDERS** Plaintiffs' counsel to propose terms for attorney's fees and nontaxable costs for review and verification by the court.

### III.     Conclusion

For the reasons set forth above, the court **GRANTS** Plaintiffs' Motion for Class Certification (Docket # 23); **GRANTS** Plaintiffs' Motion to Appoint Class Counsel

(Docket # 25); **ORDERS** that this case be certified as a class action with the class defined as stated herein; **ORDERS** Class Counsel to file with the court the proposed terms for attorney's fees and nontaxable costs within thirty (30) days from the date of this entry; and **DIRECTS** Defendants to file any objection to Plaintiffs' Motion for Approval of Proposed Class Notice, (*see* Docket ## 26-27), within fifteen (15) days from the date of this entry.

**SO ORDERED** this  27th day of July 2011.

_____
RICHARD L. YOUNG,  CHIEF JUDGE
United States District Court
Southern District of Indiana

Electronic copies to:

John H. Haskin
HASKIN LAUTER  & LARUE
jhaskin@hlllaw.com

Meghan Uzzi Lehner
HASKIN & LARUE
mlehner@hllglaw.com

Stacy K. Newton
RUDOLPH FINE PORTER & JOHNSON
skn@rfpj.com

Bradley L. Wilson
HASKIN & LARUE
bwilson@hlllaw.com

15